IN RE MILCREST NURSING HOME.

(No. 14-77-11—Decided April 25, 1978.)

*Mr. Luthur L. Liggett,* for appellee.
*Mr. William J. Brown,* attorney general, and *Mr. William J. McDonald,* for appellant.

*Per Curiam.* The Milcrest Nursing Home, located in Union County, was constructed approximately eight years ago and upon completion was licensed for operation by the Director of Health. On March 8, 1976, it was inspected by an inspector of the Division of State Fire Marshal and found deficient in a number of respects with reference to insufficient sprinkler head fire protection and the Fire Marshal notified the home accordingly. On July 28, 1976, the Director of Health notified the owner and operator of the home that he proposed to revoke its license to operate for violation of R. C. 3721.071. On August 17, 1976, counsel for the home requested a hearing on the proposed revocation which convened before an attorney examiner of the Department of Health on October 20, 1976.

Meanwhile, another inspection was conducted by an inspector of the Division of State Fire Marshal on October 4, 1976, and he found that sprinkler heads still needed to be installed (1) in the attic area, (2) in the entrance vestibule area, (3) in the 28″ by 40″ clothes closet in the front entrance hall, (4) in the 55″ by 27″ clothes closet adjacent to the nurses' station, (5) in the 15″ by 51″ by

78'' closet next to the kitchen door, (6) in the duct work over the cooking surface of the range, and (7) in the area which is accessible to storage under the basement stairway.

At the October 20th hearing the evidence was to the effect that the existing sprinkler heads were ineffective to reach the areas found by the inspector to be unprotected, but that no combustibles were stored in such areas. The theory of the licensee's appeal was that there was no legal requirement, under the circumstances, that sprinkler head protection be extended to the areas in question.

On November 2, 1976, the hearing examiner concluded that the nursing home was in violation of R. C. 3721.071 and recommended that the Director of Health revoke its license. On November 6, 1976, the home submitted to the Director documents evidencing its intent and arrangments to correct the sprinkler head deficiency over the range and on November 16, 1976, submitted its objections to the report and recommendations of the referee. On December 13, 1976, the Director of Health signed his entry confirming and approving the referee's recommendations and revoked the license to operate issued to the named operator and home.

Appeal was then taken by the corporate owner of the home to the Court of Common Pleas of Union County. Pursuant to the owner's application the court ordered one Walter Fowler, as officer of the court to "inspect the wood decking and trusses in the crawl space in said nursing home, to take photographs of the same and to report back to this Court his findings as to the fire treating stamp on said wood." Fowler testified at the hearing on the appeal over the objection of counsel for the Ohio Department of Health as to the photographs which he took and as to what he saw.

Upon the request of the Department of Health the Common Pleas Court made separate findings of fact and conclusions of law and filed its journal entry finding in accordance therewith that the "order of the Ohio Department of Health revoking Appellant's license is not supported by reliable, probative and substantial evidence, is not in accordance with law, is unreasonable, void, arbitrary, is

against the manifest weight of the evidence, is unconstitutional and amounts to the taking of Appellant's property without due process of law," and ordered "that the order of the Director of Health of the State of Ohio revoking Appellant's license to do business as a nursing home is reversed and vacated," and that he be "restrained from revoking Appellant's license for the alleged deficiencies set forth in the Fire Marshal's recommendations and the Ohio Department of Health's orders in the instant case." It is from this judgment that appeal has been taken to this Court by the "Ohio Department of Health," the appellant assigning error of the Common Pleas Court as hereinafter more fully set forth.

All of the assignments of error involve the application of the provisions of R. C. 3721.071 which became effective after the construction of the home herein involved was completed and which, in addition to requiring compliance by existing homes, provides in pertinent part:

"The building in which a home is housed shall be equipped with * * * an automatic fire extinguisher system * * *. Such systems shall conform to standards set forth in the regulations of the board of building standards and the state fire marshal."

In our opinion this statutory provision does not empower either the Board of Building Standards or the State Fire Marshal to adopt standards which shall become effective after the original effective date of R. C. 3721.071, i. e., December 30, 1972, but incorporates by reference the standards of the Board of Building Standards and the State Fire Marshal existing on that date. This conclusion is buttressed by the provisions of R. C. 3721.03, also effective December 30, 1972, which, among other things empowers the fire marshal to adopt regulations pertaining to fire safety in homes which shall be in addition to those fire safety regulations that the Board of Building Standards and the Public Health Council are empowered to adopt and which "shall be adopted prior to December 31, 1972," i. e., on or before December 30, 1972.

The Board of Building Standards' authority to adopt applicable regulations, as it existed on December 30, 1972,

was derived from R. C. 3781.11 giving it authority to provide "uniform minimum standards and requirements for construction and construction materials, * * * , to make buildings safe and sanitary as defined in section 3781.06 of the Revised Code."

In existence on December 30, 1972, was the Board of Building Standards regulation BB-57-32(C) prescribing:

"(C) A sprinkler system shall be installed and maintained *throughout* all nursing and rest homes. In hospital building of Type I construction, sprinklers shall be installed in all hazardous areas as defined in section BB-57-36 OBC. In hospital buildings of all other types of construction, sprinklers shall be installed in all areas, except hospital operating rooms and special care areas. * * * ." (Emphasis added.)

The Board of Building Standards regulations do not further define the word "throughout" nor do they make any exceptions to this sprinkler installation requirement for any areas of nursing and rest homes as is done for hospitals.

On the other hand, the parties have briefed, as being applicable, a regulation of the State Fire Marshal, apparently effective on or before December 30, 1972, specifically Article 14, Ohio Fire Code, prescribing among other things, not here pertinent as follows:

"Section 14.1. Scope.

"This article shall apply to new and existing conditions.

"* * *

"Section 14.3.

"Fire protection equipment, systems and devices shall be installed and maintained in operative condition according to nationally recognized good practices. For the purposes of this section and except where otherwise specifically provided for in OFC, the following standards constitute nationally recognized good practice: [Here follows a listing of 10 standards published by the National Fire Protection Association, including NFPA 13, 'Sprinkler Systems, Installation'] * * *.

"Section 14.4.

"Approved automatic sprinkler systems shall be installed throughout buildings as follows:

"a. All buildings classified as a Home for the Aging, Nursing Home or Rest Home under section 3721.01 Ohio Revised Code.

"The time for compliance with division (a) of this section shall not be later than January 1, 1975.

"Each sprinkler system required by division (a) of this section shall be a 'supervised' system conforming to NFPA No. 71, NFPA No. 72A, NFPA No. 72B, NFPA No. 72C or NFPA 72D as set forth in section 14.3 of the Amended AIA Fire Prevention Code. Water flow alarms shall also be interconnected with the firm alarm system required by section 14.6 of this article. * * *"

The appellant has furnished us with copies of NFPA standards numbers 13, 71, 72A, 72B, 72C and 72D, all in forms effective on or after 1975. All except number 13 deal with signalling systems and have nothing directly to do with our problem, whereas number 13 sets forth the "nationally recognized good practices" of sprinkler installation which the appellant claims require compliance as found by the fire marshall and his inspectors. Notwithstanding that we do not have before us for consideration those NFPA standards which were in existence when R. C. 3721.071 first became effective and which might, therefore, have been incorporated by reference therein by the incorporation therein at such time of the fire marshal's regulations, it is apparent that by such reference in the fire marshal's regulations, those regulations differed from the regulations of the Board of Building Standards which merely specified that sprinkler systems be installed "throughout all nursing and rest homes." This apparent inconsistency in the fire marshal regulations and those of the Board of Building Standards is resolved, however, by the statutes. Although R. C. 3721.03 provides that in case of disputes as to the interpretation or application of a "specific fire safety law or regulation, the interpretation of the marshal shall prevail," the General Assembly has further prescribed by R. C. 3781.11 that:

"The rules and regulations of the board of building

standards shall supersede and govern any order, standard, rule or regulation of the department of commerce division of fire marshal * * * and the department of health * * * in all cases where such orders, standards, rules or regulations are in conflict with the rules and regulations of the board of building standards.''

Consequently, if there is a conflict between the regulations of the fire marshal with reference to installation of sprinkler systems, whatever those regulations happen to be, and the regulation of the Board of Building Standards that a ''springler system shall be installed and maintained throughout all nursing and rest homes,'' the regulation of the Board of Building Standards governs.

The word ''throughout'' in this regulation is used adverbally. Webster's Third New International Dictionary defines the word, as so used, and in the context of the regulation, as meaning ''in or to every part: from one end to the other: EVERYWHERE.'' It is the more apparent that this all inclusive meaning is the meaning intended by the Board of Building Standards because it is consistent with the board's action in making no exceptions for nursing homes as it did for certain areas of hospitals. Further consistent with this meaning it appears that the legislative intent was that all areas of nursing homes should be protected by being able to receive an effective spray from the sprinkler system whether such areas were actually being used for the storage of combustibles, were constructed of combustible materials, or were otherwise hazardous. It necessarily follows that there was valid regulatory justification for the order of the director of health appealed from.

The trial court committed error prejudicial to the appellant as asserted in the first assignment of error in finding that the Director's adjudication order was not based on reliable, probative and substantial evidence and was not in accordance with law because, as we have interpreted the law, the mere showing that the disputed areas were areas of the nursing home required their being sprinklered.

The trial court did not, as asserted in the second assignment of error, err in failing to find that the attic

area requires sprinkler coverage, "because it is enclosed by exposed combustible construction." Its error with respect to the attic was not because the construction was combustible but because the attic was an area of the rest home coming within the requirement of the regulation of the Board of Building Standards incorporated by reference in R. C. 3721.071.

The trial court erred prejudicially to the appellant in finding that the vestibule area and the area beneath the basement stairwell did not require sprinkler coverage as set forth in the third assignment of error for the reason that the said regulation required same.

In the fourth assignment of error the appellant claims error of the trial court in allowing the introduction of additional evidence which could have been submitted at the administrative hearing.

By the provisions of R. C. 3721.03, any person whose license is revoked by the order of the Director of Health may appeal "in accordance with sections 119.01 to 119.13 of the Revised Code." R. C. 119.12 then prescribes that unless otherwise provided by law the Common Pleas Court on considering an appeal from the Director's order "is confined to the record as certified to it by the agency," and that unless otherwise provided by law, that court "may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency."

The evidence here involved which was adduced in the Common Pleas Court on appeal pertained to a static condition in the attic of the rest home existing since the home was constructed. It was neither newly discovered nor of such nature that it could not with reasonable diligence have been ascertained prior to the hearing before the agency. The error of its admission would necessarily have been prejudicial had it been relevant to the determination of the issue before the Common Pleas Court but since that issue, as we view it, had to be determined without reference to the combustibility of the attic materials, such evidence was not relevant to the issue and should not have had

any effect on its outcome. Nevertheless, it appears that the Common Pleas Court did rely on same so we must conclude that the error was prejudicial.

In the fifth assignment of error the appellant asserts that the "adjudication order of the director, based as it was on statutes and regulations which bears a rational relationship to the evils sought to be eliminated, was an enforcement of those statutes and regulations and therefore, was a valid and constitutional exercise of the police power granted to the state." So phrased this was really not an assignment of error but a proposition of law. For the purposes of this opinion, however, we will assume that the assignment of error is that the Common Pleas Court erred in finding the order unconstitutional amounting to the taking of property without due process of law.

The position of the Common Pleas Court is further explained by the following extracted from its separate conclusions of law:

"The requirement that nursing homes be sprinklered 'throughout' is subject to many interpretations, but it is not in itself sufficiently definitive (without additional criteria or regulations) to require sprinklers in every nook and cranny, every incombustible area, every corner of a structure. This requirement must be construed in conjunction with F. M.-5-01 THE INTENT OF THE FIRE CODE, which is to prescribe regulations for *safeguarding,* to a *reasonable degree,* life and property. Since there is no standard laid down by the Fire Marshal other than this and the rule making is left up to the interpretation of the individual inspector, these rules could not have a general and uniform application; and to require Appellant to comply with these orders is unreasonable, is void, and is arbitrary. All of which amounts to the taking of Appellant's property without due process of law."

However, as we have pointed out in our discussion of the first three assignments of error the applicable regulation of the Board of Building Standards prevails over that of the fire marshal and the "intent of the fire code" has nothing to do with the interpretation of the regulation of the Board of Building Standards. That regulation does

not compromise the safeguarding of the patients of a nursing home to that of only a reasonable degree. It obviously requires such patients to be safeguarded to the highest degree; witness, the lack of exceptions with application to the sprinklering of nursing homes creating even a higher standard than that applicable to hospitals.

It is the obvious intent of R. C. 3721.071, and the applicable regulations incorporated therein, that the threat of fire in nursing homes, where the safety of elderly and non-ambulatory patients is primarily involved, be diminished to the maximum degree by the requirement of sprinkler systems that will not only take care of conditions arising from construction but also arising from use and occupancy. Even a building constructed from non-combustible materials constitutes a danger and threat to its occupants if after construction it becomes occupied by combustibles. It is to diminish this hazard to life and health that the requirement of sprinklers "throughout," applied in that word's ordinary sense and meaning, becomes uniform and general in its application, and a proper and constitutional exercise of the police power of the state. A clear and sufficient determination of policy has been legislatively made and adequate rules and standards exist. Compare *Carney* v. *Board of Tax Appeals* (1959), 169 Ohio St. 445, 451.

We find the fifth assignment of error well taken.

For the errors of the Common Pleas Court heretofore set forth in all but the second assignment of error, which errors were prejudicial to the appellant, the judgment of the Common Pleas Court must be reversed and vacated. In that the evidence is conclusive as to the application of the regulation of the Board of Building Standards, final judgment must be entered finding that the order of the Director of Health is supported by reliable, probative, and substantial evidence and is accordance with law, and affirming that order.

*Judgment reversed.*

Miller, P. J., Guernsey and Cole, JJ, concur.